In the afternoon docket, we will call 514-0509 in the Matter of Estate of Nettles. We have Mr. DeBoer, Mr. Conner. Good. Hi. I'm Mr. DeBoer on behalf of the Karen Hall family. Okay, very good. When you're ready, you may proceed. Please, Mr. Conner. We're here today on the probate matter out of Bond County in the estate of Wayne Nettles. Mr. Nettles passed away on June 2014. Sometime after that, the petitions for letters of administration since he died of testate were filed by his daughter, Karen Nettles, who is my client. In the affidavit of heirship that Ms. Nettles had filed, she listed herself as the daughter of the decedent and also acknowledged in that affidavit of heirship that there may be at some time an allegation by Ms. Melissa Crone that she may be the daughter. My client took the position and continues to take it that she is not the daughter, and it's one of the issues in front of the court of dispute. Shortly after that, a petition was in fact filed by Mr. Conner's firm on behalf of Ms. Crone with an affidavit of heirship alleging that she herself was in fact the daughter of the decedent, and my client, Karen Nettles, was the daughter. So there became a dispute over heirship. There became a dispute as to whether Ms. Crone was in fact the daughter or not the daughter of the decedent. There was a hearing held in the Bond County Court from Judge Slemmer on August 27, and, again, the dispute was at that time as agreed whether or not she was the daughter. In that hearing, there were parts of statutes that were presented by both sides. There was some testimony. It was and continues to be the position of my client that as of that date in the matter of heirship, we were really dealing with the issue of paternity, and the reason that paternity was an issue was based upon the pleadings in front of the court where Ms. Crone was there not alleging that she may be entitled to take under the estate as an illegitimate child, but she was in fact the daughter of the decedent. So having that in the pleadings, it was our position and continues to be our position. Is that what needed to be resolved? Is it possible as a second matter, regardless of whether or not she's the daughter, could she potentially take under the estate under the decedent distribution statute as an illegitimate child that may be legitimized? That, in fact, has never been addressed as of yet, and, again, as of that day, we were prepared to deal with the issue of whether she was in fact the daughter. We were dealing with counterpetitions. But that was only in order to determine preference as far as who would be the administrator of the estate. Yes, ma'am. And as I understand it, your client didn't want to be the administrator. She asked that someone else be appointed. At the time, she originally was Larry Harnito. Harniture, ma'am. Harniture. Harniture. At that time when she originally filed the initial petition, she is a resident of Florida, and Larry is a lifelong friend, and so she was who he requested. Subsequent to that petition and then the counterpetition, she did amend her request, and she was going to move to the state of Illinois to administer the estate if she was appointed. Okay. Counselor, I'm curious on the application of the Paternity Act and the presumptions that appear in the Paternity Act. Were there cases for determination of heirship that led you to apply the Paternity Act to a case like this? No, sir, there's not. That's a very good question. The leading us to the Paternity Act, again, was based upon our position that she had in fact taken, Ms. Croman taking the position that she was the daughter of the decedent. If you look to, sir, the children born out of wedlock statute, it talks about how under certain facts someone can be deemed to be the daughter and by a court after the decedent's death. So the issue as we framed it using the Paternity Act was based upon the premise that Ms. Croman was not there, again, alleging that she's entitled to take under this estate because she is a legitimized child, which, again, certainly is a proper thing for her to take a position of, but that she was there alleging that I am the daughter of the decedent and there I am allowed to have equal preference to our client. So that was our basis of applying the Paternity Act, again, to determine if, in fact, is Ms. Croman the daughter of the decedent for more than just whether or not she may be entitled to share in some value of the estate. So in this hearing, again, there was, in the record you will see, the argument and the presentation of law, and the law that was presented by us was the Paternity Act, and the Paternity Act, as the court may have read, has four presumptions that may apply under certain circumstances. The presumption that we applied was the presumption that existed in the common law before the codification of the Paternity Act, is that if a child is born during a marriage or conceived during a marriage, that child is presumed to – the father of that marriage is presumed to be the father, absent rebuttal by clear and convincing evidence. It is undisputed in this case that at the time of conception of Ms. Crum, that Mr. Bolton and Melissa's mother were, in fact, married. That's not disputed. So it was our position that in order to establish whether or not Ms. Crum is the daughter, that we apply that particular standard, not only does it exist in the Paternity Act, but it existed in the common law prior to the codification. The argument presented by Ms. Crum was that, as using the Paternity Act, that another one of the four presumptions applied, and they argued that A-4 should apply. And A-4 says that if a child, natural mother, is signed and acknowledged, or if the natural father is someone other than the presumed father. So, again, subsection 4 talks about if the natural father may be someone other than the presumed father. And, again, the presumed father under these facts would be Mr. Bolton because he was married during conception. If they have, in fact, acknowledged the presumed – or if the natural father and the presumed father have acknowledged and denied heritage, then that can, in fact, become a conclusive presumption, which is true. That is a fact. Counsel, do you agree that the Probate Act provides for a child born out of wedlock to be an heir? Yes, sir. And isn't that what the court found in this case? No, I think the court went further than that, sir. I think that's the issue in front of the court. Again, the court went further not merely to find that Ms. Crum is an heir, that Ms. Crum is the daughter. Well, isn't that what makes her an heir? I believe being a legitimized child can make her an heir. You're saying an illegitimate child is not an heir? No, I'm saying that if an illegitimate child comes to court and presents facts, and those facts are induced in the brief of if a child was born out of wedlock, the parents intermarry, and the father acknowledges that child, that that child can, in fact, be legitimized to the point that they can take under the estate, whether or not they're actually determined conclusively to be a daughter or a son. They have been recognized as a child and legitimized to take under the assets. Again, which we're taking the position, sir, that that's not the same thing as actually being found to be a daughter or a son under the Paternity Act, which would then also entitle them to preference to administer and not merely to take the assets as a legitimized child. I just don't understand the Child in the Paternity Act versus the Child in the Probate Act. The child is a child. The child is an heir. I don't understand your distinction. It seems to me without a difference to me. I didn't miss that. Hang on a second. I don't understand your distinction. You just said a child can inherit. Yes. In response to Justice Moore. And then you said, but a child is not a child under the Paternity Act. I'm sorry. I don't know what I was distinguishing. Daughter. You used the term daughter. Yes. What's the difference between a daughter and a child? The difference being whether a daughter or a son – for example, my client, there's no dispute on whether or not she's the daughter. She was born during the marriage, et cetera. There's no dispute she was the daughter, Mr. Reynolds? We disputed Ms. Crum was the daughter, yes. Okay. Your client, there's no dispute. No, ma'am, there's no dispute. Wasn't there a hearing, an evidentiary hearing about that? There was an evidentiary hearing. The order which was a product of that hearing is what was appealed, sir, yes. Okay. And at the hearing, did Ms. Crum testify? Ms. Crum was the only person that gave testimony, yes, sir. And that testimony was not rebutted? Again, there was no testimony rebutting her. The question would be whether what she provided in testimony, assuming that the standard would be even applied if they were asking the court to apply, whether that rebuttal that she provided would be clear and convincing to overcome the presumption that we asked the court to consider. And did she testify that she had always known Wayne Meadows to be her father? She did testify to that, yes, sir. And that she had never known anyone else to be her father? Yes, sir, she did. And that she also considered Karen to be her sister and that Karen considered her to be her sister? I believe she did testify to that, yes, sir. And that she had a medical power of attorney? I believe she did testify that she had a medical power of attorney. And that she was listed on her birth certificate as Wayne Meadows was the father, is that right? That's correct, sir. And what evidence is there to contradict any of the evidence that the court relied on? Again, sir, I'm not suggesting that there's evidence to contradict that. Our position is that Melissa Crum's testimony of what she observed during her life after she had been born does not go into clear and convincing standard to the issue of whether or not Mr. Bolton was not the presumed father. Ms. Crum was not alive at the point of conception, et cetera. So it's our position that while her testimony as to what she experienced during her life, again, doesn't overcome the presumption, if that presumption is in fact applied, sir, that Mr. Bolton was not the father and it was someone other than him. Can you cite any case under the Probate Act that says there is a presumption that she has to overcome? No, sir. What I cite is the Paternity Act, and the Paternity Act can be used by a probate court to establish whether or not someone is the child of a deceased. And is there authority for that? That's kind of what I was trying to ask you to begin with. Is there authority that a court sitting in probate, even though they really don't anymore, would apply the Paternity Act to make a determination under the Probate Act? Sir, the only thing I can point to is if you look within the children's born out of wedlock statute, within the Probate Act, it talks about a court. Someone may be considered the child. And I think if you look at the children born out of wedlock part of the statute, it differentiates different circumstances whether someone is able to take under the estate or whether they're actually deemed to be the child. And I think there is a differentiation there. And the children born out of wedlock statute talks about determinations made after someone's death that that person is in fact their child and that they are deemed the child. So, again, the Probate Act, again, in that section talks about determining whether someone is a child. And, again, the standard for determining that would be the Paternity Act. Do I have a case that I can handle for it that says that? I do not, sir. Well, and the burden of proof would be different, and there would be a different presumption. I mean, otherwise it's just a preponderance of the evidence that the trial court would determine is this a child or not. But under the Paternity Act, there's created a presumption that must be overcome by clear and convincing evidence. Although I think, and I'm just trying to recall, did the trial court find that by clear and convincing evidence that the presumption had been overcome? Well, you know, that's a good point, Your Honor, and that's one of the things that we've raised for the court to look at. I have a copy of the order here that comes from Common Law 78 is the order number. And the court refers to the Paternity Act, and it refers to clear and convincing evidence having been found by the court. But the court also refers to the dissent and distribution part of the statute as well in the Probate Act. So it refers to the Paternity Act, refers to the Probate Act, and the court's not real clear in this order which presumption it applied out of the Paternity Act, but it does seem to have considered it. We just don't know whether it applied A-1, which is what we requested, or whether it applied A-4, which is what was requested. But the court does mention that it found clear and convincing evidence, which, again, one would infer that that meant that A-1 was applied, but it doesn't come right out and say that, sir. So the court may have applied a higher standard on Melissa than need be applied. But assuming the Paternity Act applies, then it did consider the right standard. If you look to also assert that your children were not wedlocked out of the Probate Act, there is a provision where it talks about if during a lifetime the decedent was a judge to be the father of a child who were not wedlocked by a court of competent jurisdiction, an authenticated copy of that judgment is sufficient proof of paternity. But in all other cases, paternity must be proved by clear and convincing evidence. So the Probate Act in that children were not wedlocked statute does have a clear and convincing standard. But the very last line of the statute you just read says a person who was a child born out of wedlock was parents intermarried. Did that happen to you, right? No, ma'am, I don't believe. I believe what that is. So you take issue with parent or parent? No, ma'am. If you read that language that you're referring to there, it very much mimics under the Paternity Act 82, which has to do – I think that language, ma'am, is talking about if two people – a child born out of wedlock, but the – for example, in our facts, the mother was not already married to another person. So if you have a child born out of wedlock, then the parents marry, and then the father recognizes the child, I think that's that fact pattern. But that would not cover if a child born out of wedlock to Mr. – or Mr. knows in this fashion. But Ms. Crum was not born – or she wasn't born out of wedlock. But again, the presumption that when she was conceived, she was – there was another marriage, I think that distinguishes that. The evidence, as I understand it from the divorce petition, says that these two people were separated for a long time. In fact, he deserted her and couldn't be found for the divorce hearing. They had to serve him by publication. There it is. So, I mean, that was unrebutted. So I'm not clear when you talk about the very last line of the statute, which you seem to have – it seems like in all the arguments, nobody's talked about the last line of the statute. You have a child who's born out of wedlock. She's actually born in wedlock is what you're saying. But she was conceived during wedlock. Conceived during wedlock. Yes, ma'am. Yes. And I believe that's the distinction for the court. And was she born when her parents got divorced? She was born five days after the parents were divorced. Okay, so she is born out of wedlock. That's correct. Then her parents, quote, unquote, assuming that he is the father, her parents marry, and he acknowledges her on the birth certificate. Correct. How does this last line not apply? There's no clear and convincing there. It says this is what it is, and we're using the paternity statute or the out-of-wedlock statute. If you only apply the out-of-wedlock statute? Yeah. I mean, this is what happened. This is exactly what happened. I agree that's what happened. And again, ma'am, I agree. And nobody's talking about this last line. I would point out, again, as I've mentioned, is when we're talking about the children born out of wedlock statute, we're talking about descent and distribution. We're talking about who may take under the estate, who may not. If you go back to year A-1, a man is presumed to be the natural father of the child. So we have this presumption that back in Section 2 has to be rebutted by clear and convincing evidence. But if you go to number 4, which is, again, what seems to have happened here, we've got a vital record. We have the birth certificate that says he's the father. That doesn't have the same clear and convincing evidence, does it? I believe that particular conclusion, that's correct. So I mean – Well, that provision, I would point to the court, was part of the adoption of that that was done after Ms. Crum was born. It refers to acknowledgments and denials of paternity, which weren't present in Ms. Crum and Mr. Nettles' situation because the law didn't exist. So that conclusive presumption occurs frequently today. In 1970, it didn't exist. And, again, there were no acknowledgments or denials signed by Mr. Bolton or Mr. Nettles or anyone. So – Well, you have the birth certificate. You do have the birth certificate. That's correct. And I think the birth certificate, at best, is a piece of evidence that may lead the court to determine whether or not clear and convincing standard had been met. That's how we view it now. But whether it creates an inclusive presumption, again, conforming to the Vital Records Act that didn't even exist in 1970, there were no acknowledgments. So we feel that, regardless of how the court may come down, that there was no conclusive presumption in any set of facts. Well, if you agree that the birth certificate is evidence and there is no other evidence, then how is it not clear and convincing? Well, I believe, again, sir, that if the court were to apply the presumption that the presumed father is the father of which the child was conceived in absent rebuttal by clear and convincing evidence, that the evidence that would have to be induced to a court would be regarding what was occurring on or before conception, around conception. Those activities regarding people's activities, who they were with, et cetera, would be relevant as to whether or not after this child was born. Go ahead. Whether the child was born and Mr. Nettles put his name on the birth certificate and whether Ms. Crone recognized him as a father don't necessarily deal directly with whether or not Ms. Nettles Crone was conceived by someone other than Mr. Bolton. It's not a direct correlation to survive a clear and convincing statement. Okay. Thank you. You'll have some time. Thank you, ma'am. All right. Is it Mr. Conner? Yes, ma'am. You wrote so little. I appreciate it. Good afternoon. May it please the court, counsel. To sort of pick up right at the end there, I just would like to point out that the law in 1971 was not briefed to this court. That was not argued at the trial court level. Anything with regard to the applicability of the Violent Records Act in 1971 was neither argued at the trial court or briefed to this court. So I think in terms of saying that there was no Violent Records Act or some other version of the Violent Records Act, I mean, I'm looking at the common law record, page 32. Instead of CP1, there is a certificate of live birth. There was some act authorizing this, the issuance of this record. The Madison County Registrar of Births didn't do this without a form. They did this under some statutory schemata. However, that was neither brought up before nor briefed. And now I'll just ask the court to take that into account in looking at this. The issue before the trial court and this court was airship. The child and daughter portion came along as a result of the petition for letters filed by Karen Nettles alleging that Melissa Nettles' father is not a child of the deceased. So the entire discussion of the applicability of the paternity act is one generated by the petition for letters filed by Mr. divorced by Karen Nettles. We never get there in the airship proceeding absent this, these two petitions that are out before the trial court that say we're asking for letters of administration. Here's why. Here's our affidavit of airship and the affidavit of airship filed by Melissa Nettles' father. She must allege that she is the daughter. That's how she arrives at airship. As the court adequately pointed out during counsel's argument, there's another way that she can establish airship beyond mere daughtership. And that is by the intermarriage of her parents, her having been an out-of-wedlock child. So I think that the court's order from September 15th, that's common law record 78, the order that's at issue in this case, does a sufficient job of, no matter how you slice it, finding daughtership and airship by clear and convincing evidence. So I think the court was convinced by whatever standard applied that Melissa was two things. She was a daughter and she was an heir. Being those two things, the court made this ruling under what I believe to be the correct statutory scheme and entered its order of airship to proceed to the next step, which the court addressed a little bit, which would have been preference. If we get to daughtership, we get to preference. I just don't want the court to get too far down that road because the only reason we were at daughtership was the allegation in the petition for letter of administration saying Melissa Nettles' prom is not the daughter of the deceased. Now, that was a matter affirmatively injected by Karen Nettles. It's not a matter injected by the affidavit of airship of Melissa Nettles' prom. When evidence did Karen provide that your client was not the daughter? None. The only witness at trial was Melissa Nettles' prom. There were two exhibits that were stipulated exhibits. There was some brief cross-examination of Melissa Nettles' prom that, by the court's estimation at trial and by our estimation here on appeal, did nothing to vitiate the legitimacy of the two exhibits, the CP1 and CP2. CP1 being the certificate of life oath that gets us to our first point, which is Wayne Nettles was the presumed father anyway. But if Melissa Nettles' prom was required to present any further evidence, that gets us to CP2, which, to go through some very brief facts, CP2 tells us that October 31st, 1969 was the last potential encounter between Pearl Holden and Ronald, her husband at the time. The divorce decree tells us that for, here's some arithmetic, for 16 months and 21 days, that's a total of 507 days, that had elapsed between the last contact between Pearl and Ronald, which would have been the last potential moment of conception, of a child. Human gestation, if you take the average of 40 weeks, that's 280 days, significantly less than the 507 days that the only confirmed record from the court tells us these two had any contact. As the court adequately pointed out, Mr. Holden was served by publication. And these facts came before the court pursuant to the allegations in a divorce petition filed by the mother? That's correct. Now, that begins at Common Law Record 33. That was our exhibit at CP2 at trial. That's a certified copy of the record in Bond County of the divorce decree. And that decree recites all of those conditions upon which the divorce was granted at that time, Mr. Holden having been deserted and absent in one year last past from the date of the petitioning, which ultimately was before the decree. By my count, about two and a half months. January 11th, 1971 would have been the petition date. That petition was granted March 21st, 1970. Pardon me. That's when Melissa was born. That petition was granted five days in advance of her birth, which Mr. Holden very accurately points out. Look, we don't disagree that this child was conceived while Pearl Holden was married to Robert Holden. But as the statute, as the statutory scheme works, whether it's daughtership or heirship, we arrive at the same result. The trial court arrives at the same result regardless of which road it takes. It ends up back in both daughtership and heirship by application of statute. We don't believe that the certificate of life or death, that's a conclusive presumption. The fact that that's not briefed as to 1971, I think it's an appellate murder there. But we have a certificate of life or death. We have subsequent intermarriage as testified to by Melissa. And we have heirship and daughtership by clear convincing evidence. But I would like to address that there are other applicable paternity conditions that we satisfy. We actually satisfy A2 as well because, as Mr. DeBoer argued, that last paragraph of the heirship statute is very similar. And we could have satisfied A2 as well. Counsel, let me interrupt you and ask. So you concur with appellate counsel that the Paternity Act applies. And I guess I obviously from my questions, I'm questioning that by what authority in determining heirship in a probate case you apply the Paternity Act. And from your argument that you just stated, you're saying, well, it may or it may not, but we win either way. Very correct, Robert. If we get there, right, the only reason paternity is injected is because daughtership was challenged at the outset. Again, I think the court could have made that determination of heirship and daughtership without reaching into the Paternity Act. But, in any event, to the extent that it's necessary because it was alleged that Melissa was not a daughter. Isn't a child born out of wedlock who is the child of the decedent also a daughter? I'm not understanding the distinction. I don't believe there is. To the extent we reach the Paternity Act, we believe that we can satisfy a number of those conditions should we be required to. But at its core, the court was called upon to determine heirship in that proceeding. And it did that. And it did it by clear and convincing evidence. It did use the term daughter in addition. But I don't think that that makes this order in any way effective. So I'm going to point out that this court is being called upon in a manifest way to the evidence standard. And, as such, I don't think there's anything legally or factually that should lead this court to believe that the opposite result should have been reached by the trial court. Which I think is the standard that would have to be here in order to.